_____

No. 95-3960
_____

United States of America,          *
                                   *
            Appellee,              *
                                   *   Appeal from the United States
     v.                            *   District Court for the
                                   *   Western District of Missouri.
Jack Conrad Choate,                *
                                   *
            Appellant.             *

_____

                Submitted:  September 12, 1996

                   Filed:  November 29, 1996
_____

Before LOKEN, HEANEY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

     Jack Conrad Choate, having pleaded guilty to two counts of wire fraud, 18 U.S.C. § 1343 (1994), appeals his sentence.  The indictment charged Choate with eight counts of wire fraud for selling franchises by misrepresenting what the buyers would receive for their money and by exaggerating the amount of money the buyers would be able to make through operating the franchises.  Choate pleaded guilty to only two counts, but his offense level took into account the relevant conduct in the other counts, as well as similar conduct Choate engaged in while out on bond.  Accordingly, the district court[1] sentenced Choate to thirty-eight months on each count, to be served consecutively; and three years supervised

_____

[1]The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

release.  He was required to pay $26,360 in restitution.  Choate attacks as clearly erroneous the district court's findings that Choate's business dealings while out on bond were relevant conduct that should increase his offense level.  He also contends that the district court erred in including as a term of his supervised release that he should not be self-employed. We affirm the sentence.

## I.

Choate owned a business known as CMD, which sold "commercial loan broker franchises" to would-be loan brokers.  CMD advertised in newspapers around the country, listing a toll-free telephone number.  When someone responded to the ad, Choate or another salesman would go to the person's city and meet the prospect at a hotel.  Choate or the salesman offered the prospect the chance to buy a franchise, which would enable the prospect to arrange loans, using a computer and software containing lists of participating financial institutions, to be provided by CMD.  The prospects were told that CMD would train them to become a loan broker at a three-day seminar in Kansas City.  CMD promised the prospects that they would receive support from CMD regarding equipment, supplies, and technical assistance. The prospects were told that they would be the only CMD broker in an area, and that if they could not obtain a loan, another Choate company would co-broker the loan.  CMD gave the prospective buyers names of people who would act as references.  Unbeknownst to the buyers, the references had been paid to give positive reports on their experiences as CMD brokers.  The references inflated the amounts they were earning as CMD brokers and the length of time they had been in the business.  The buyers paid between $10,000 and $24,000 for their franchises.

After franchise buyers wired CMD the franchise fee, they encountered problems with the franchises.  The buyers found that the financial institutions listed on the CMD software would not do

business with them, were out of business, could not be located, or for some other reason did not make any loans through the franchise owner. Some franchise owners would find that they were not the only CMD franchise owner in their area. CMD did not help the franchise owners arrange the loans. Many franchise owners who asked CMD for their money back never got a refund. The presentence investigation report listed a total of $792,826 that 48 investors lost by investing in CMD franchises during the dates covered in the indictment.

Starting in 1991, Choate began operating a business called Physi-Care, through which he sold franchises for electronic billing services. Physi-Care franchisees were supposed to be able to provide electronic billing services for doctors and dentists for a fee. The franchisee would transmit insurance claims electronically to a clearing house. This process was supposed to result in quicker payment than conventional paper billing. Physi-Care's franchise sales methods were similar to CMD's methods, using newspaper ads, a toll-free telephone number, and sales meetings at local hotels. The franchise fee was $7,990, which entitled the buyer to software, marketing tools, a video, stationery, medical language books, and training. Physi-Care told the franchisees that they would be provided ten doctors to service and that they could charge $4 per claim filed and earn $16,080 annually per doctor. Again, Physi-Care gave the prospective franchise purchasers lists of references, who actually had been paid to give positive responses overestimating the amount of money a franchisee could earn.

After the franchise owners wired the franchise fee to Physi-Care, they found they could not get the software to work, that Physi-Care did not provide them doctors to work for, and that they would have to negotiate the fee they would get for each claim. The FBI investigation revealed that none of the Physi-Care franchise owners interviewed were able to operate the business as promised.

Again, when they tried to get their money back from Choate, they were unsuccessful. The presentence investigation report listed $508,335 in losses to Physi-Care customers.

After Choate was indicted and while he was out on bond, the probation officer learned that Choate had engaged in selling more electronic billing franchises under a different company, named Medical Data Systems Express. The probation officer amended the pre-sentence investigation report to include the post-indictment business dealings as relevant conduct, thus increasing Choate's offense level, taking away his downward adjustment for acceptance of responsibility, and assessing more points for obstruction of justice.

## II.

Choate argues that the findings concerning relevant conduct, U.S.S.G. § 1B1.3, and his role in the offense, U.S.S.G. § 3B1.1, are erroneous. At the outset, we must address the standard of review, which Choate contends is de novo.

We review the district court's findings of fact only for clear error. United States v. Hulshof, 23 F.3d 1470, 1472 (8th Cir. 1994). We may reverse findings of fact only if, after review of the entire record, we are left with the definite and firm conviction that a mistake has been committed. United States v. Williams, 890 F.2d 102, 104 (8th Cir. 1989) (per curiam).

After the probation officer amended the presentence investigation report to include Choate's post-indictment business dealings as relevant conduct, Choate objected to the inclusion. He contended that he had operated Medical Data Systems Express lawfully and that the references were no longer making any misrepresentations to potential clients. The court held a hearing on the issue and made the following findings:

-4-

(1) defendant Choate engaged in unlawful conduct by continuing to unlawfully sell medical billing center software through MDSE while upon bond; (2) defendant Choate was the leader of a criminal activity which included five or more participants; (3) defendant Choate obstructed justice by providing a material false statement to the Probation Officer which necessitated additional investigation, time, and expense; and (4) defendant Choate failed to accept responsibility for such crimes by such continued activity.

Choate argues that these findings are not findings of fact, but findings of law. However, he does not ask us to remand for better findings, as we must do if the findings are inadequate to allow meaningful review, see United States v. Fetlow, 21 F.3d 243, 248 (8th Cir.), cert. denied, 115 S. Ct. 456 (1994).  Instead, he "urges this court to deem the record adequate for meaningful appellate review."  Choate does not ask us to send the case back for the district court to make different findings of fact-- instead, he wants us to make different findings.  His argument is solely directed to avoiding the clearly-erroneous standard of review and having this court make its own assessment of the facts.  This, of course, we may not do.  The district court's findings, though somewhat conclusory, are clear enough in light of the issues that were presented to the court to resolve.

Choate also argues that the district court's findings were clearly erroneous on the issue of whether Choate's business practices while out on bond were fraudulent.  Choate argues that the government did not prove that Medical Data Systems Express sold software that did not work.  The record could have supported opposite conclusions on this issue.  The government produced three witnesses: Mark Phillips, MDSE's computer programming and training consultant, and two MDSE franchise customers, Carolyn Necessary and Michelle Ballard Koelling.  Phillips testified that he could never get the MDSE software to connect to the clearinghouse to transmit a claim, and that he had told Choate the software did not work.  Necessary and Koelling were computer novices, but had received

their promised training from MDSE, which consisted of training by Mark Phillips. Neither was able to process a claim using MDSE's software. On the other hand, Choate introduced testimony of another MDSE computer trainer, Brad Bowzer, who stated that the software was "rough," but that he was able to use the software to transmit claims to the clearinghouse. Choate also introduced the testimony of a representative of the clearinghouse, Christopher Heller, who said that the Physi-Care software, which he believed was the same software MDSE used, did in fact transmit claims to the clearinghouse when used in conjunction with software provided by the clearinghouse. The testimony is conflicting, but is adequate to support the district court's conclusion that Choate was continuing his past pattern of selling franchise packages that the franchisees were not able to use as promised. On this record, we cannot say that we are left with a definite and firm conviction that the district court made a mistake.

Choate also attacks the district court's factual conclusion that he was the leader of a criminal activity that involved five or more participants. Choate argues that there was no showing that the other participants were criminally responsible, and therefore the requirements of U.S.S.G. § 3B1.1(a) have not been met. Choate has waived this argument by his assertions in response to the presentence investigation. In response to the proposed assessment of four points under section 3B1.1, Choate contended that "the appropriate level increase should be 3 and not 4 in that CMD and [Physi-Care] were in reality communal operations with which all participants were fully knowledgeable and responsible." He argued that the other people were sufficiently involved in the enterprise that he was not really their leader or organizer. By asking for a three-level increase rather than a four-level increase, Choate was arguing that he should come within section 3B1.1(b), which assesses three points for being a "manager or supervisor," rather than section 3B1.1(a), which assesses four points for being an "organizer or leader." Both sections require that the defendant

oversaw an activity that involved "five or more participants or was otherwise extensive"; therefore, by arguing that he came within section 3B1.1(b), Choate has conceded that there were "five or more participants." This question was not disputed at sentencing, and the government did not, therefore, introduce proof on this issue at the hearing. Choate cannot resurrect a factual issue on appeal that he conceded below.

We conclude that the district court's findings of fact were not clearly erroneous.

## III.

Finally, Choate contends that the district court erred in adding as a condition of Choate's supervised release that he cannot maintain self-employment during his term of supervised release. Choate contends the restriction is overly broad.

Under U.S.S.G. § 5F1.5 a court is subject to the following limitations in imposing occupational restrictions:

### Occupational Restrictions

   (a)   The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:

      (1)   a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

      (2)   imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for

which the defendant was convicted.

(b)     If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

During the sentencing the district court explained its reason for imposing the restriction on self-employment:  "We're trying to keep him from getting into this same problem again and from taking advantage of any member or members of the public."

The Guidelines give the district court discretion in determining the appropriate conditions on supervised release.  United States v. Mills, 959 F.2d 516, 519 (5th Cir. 1992).  Choate has demonstrated that he is given to excesses of salesmanship that tend to creep up in business after business.  The district court had before it evidence of three separate businesses Choate operated that all ended up perpetuating the same cycle of fraud. One of these businesses started up after Choate was indicted. The district court is not required to pit its imagination against Choate's to anticipate what sort of business he could put to fraudulent use.  He needs an employment situation in which he is not left to his own devices. The prohibition on self-employment seems a reasonable way to protect the public from Choate's practices and to channel Choate's energies into a less destructive path.  While the restriction was general in its terms, we cannot say that upon the evidence in this record, the district court abused its discretion in imposing it.  We see no abuse of discretion.

We affirm the sentence imposed.

-8-

A true copy.

Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.