# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2777

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Christopher Carter, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: April 14, 2011
Filed: August 30, 2011

———————

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Christopher Carter pleaded guilty to one count of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced him to a term of 105 months' imprisonment, to be followed by three years of supervised release. Carter appeals the district court's application of the advisory sentencing guidelines and its imposition of a special condition of supervised release. We affirm.

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

On July 12, 2008, Carter knocked on the door of a motel room in Little Rock, Arkansas, identifying himself as "room service." After the occupant of the room opened the door, Carter forced his way into the room, pointed a handgun at the occupant, demanded money, and threatened to kill the occupant. Carter and a female associate collected the occupant's money and left the room. The police were called, and officers arrested Carter and his associate later that day after observing them as they exited a car with a stolen license plate. Inside the car, the officers discovered a semi-automatic pistol on the center console, along with ammunition and $50 in cash. The victim identified Carter as the man who robbed him at gunpoint. On January 5, 2009, Carter pleaded guilty in Arkansas state court to charges of robbery and theft and was sentenced to a twelve-year term of imprisonment. Carter has been incarcerated since July 12, 2008, and he is projected to be released from state custody in December 2016.

On June 3, 2009, a federal grand jury indicted Carter on one count of unlawful possession of a firearm as a previously convicted felon, in violation of § 922(g)(1). There is no dispute that the felon-in-possession count stemmed from the discovery of the semi-automatic pistol at the time of Carter's arrest on the state robbery and theft charges. Carter pleaded guilty to the § 922(g)(1) charge on May 24, 2010.

At sentencing, the district court determined that Carter's advisory guideline sentencing range was 84 to 105 months' imprisonment. Carter asked the district court to reduce the range by 24 months, to 60 to 81 months' imprisonment, to account for the time he had already served in state custody for his state robbery and theft convictions. He relied on USSG § 5G1.3(b)(1), which provides:

> If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . and that was the basis for an increase in the offense level for the instant offense . . . the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of

imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.

Under § 5G1.3(b)(1), a sentencing court should first calculate the appropriate total punishment for a defendant, then reduce that total punishment to account for the time the defendant has already spent in custody. USSG § 5G1.3, comment. (n.2(D)). The district court believed that § 5G1.3(b)(1) called for a 24-month reduction in Carter's ultimate sentence. After expressing concern about Carter's extensive criminal history, however, the district court indicated that it would not follow § 5G1.3(b)(1); instead, the court imposed a sentence of 105 months' imprisonment and three years of supervised release. Over Carter's objection, the district court also imposed a special condition of supervised release that barred Carter from obtaining employment with a federal credit union or any institution insured by the Federal Deposit Insurance Corporation ("FDIC"). Carter now argues that the district court erred by failing to consider § 5G1.3(b)(1) in its guidelines calculations and by imposing the special condition restricting his ability to work at federal credit unions and FDIC-insured institutions.

Carter asserts that the district court committed procedural error at sentencing by failing to apply § 5G1.3(b)(1) in its guidelines calculations. *See Gall v. United States*, 552 U.S. 38, 51 (2007). We disagree, because the record shows that the district court properly considered § 5G1.3(b)(1) in its guidelines calculations and reached its chosen 105-month sentence only after determining that a guidelines sentence was inappropriate.

The district court correctly calculated an advisory guidelines range of 84 to 105 months' imprisonment before considering the effect of § 5G1.3(b)(1). *See* USSG § 1B1.1(a)(7). The district court repeatedly stated that it understood Carter's § 5G1.3(b)(1) argument, and even described in detail the purposes of that provision. *See United States v. Williams*, 557 F.3d 556, 563 (8th Cir. 2009). The court observed, however, that "[t]he guidelines aren't mandatory," and asked why it "should . . . even

-3-

give a guideline sentence," given Carter's history of violent criminal conduct. Rather than sentence Carter to a term that reflected an advisory reduction under § 5G1.3(b)(1), the district court determined that a variance from the guidelines was appropriate in light of other factors set forth in 18 U.S.C. § 3553(a), including the need for the sentence imposed to reflect the seriousness of the offense, to deter criminal conduct, to protect the public, and to provide the defendant with educational and vocational training. *See* 18 U.S.C. § 3553(a)(2). Ultimately, the court imposed a sentence of 105 months' imprisonment, and stated in response to Carter's § 5G1.3(b)(1) objection that it "was not going to give him a guideline sentence on that." The court thus did not fail to consider § 5G1.3(b)(1) in its guidelines calculations or in fashioning its ultimate sentence; it simply determined that, in light of all of the § 3553(a) factors, a variance from the guidelines was appropriate. *See United States v. McLoone*, 411 F. App'x 45, 47-48 (9th Cir. 2011); *United States v. Lane*, 509 F.3d 771, 775-76 (6th Cir. 2007).

Carter also asserts that the special condition restricting his ability to work at certain financial institutions should be vacated. He argues, among other things, that this occupational restriction is not reasonably related to the relevant § 3553(a) factors and that the district court failed to support the restriction with sufficient individualized findings. We review the district court's imposition of special conditions of supervised release for an abuse of discretion. *United States v. Durham*, 618 F.3d 921, 933 (8th Cir. 2010).

The district court declared at sentencing that Carter "is disallowed from obtaining employment with an institution insured by the FDIC or Federal Credit Union," and explained at sentencing that the special condition was appropriate for Carter "because of his history." As is often the case, this oral pronouncement was worded imprecisely, *see United States v. Love*, 593 F.3d 1, 10 (D.C. Cir. 2010), but the written judgment clarified, consistent with the oral pronouncement, that "[p]ursuant to 12 USC §§ 1785 and 1829, the defendant shall not obtain employment

in an institution insured by the FDIC or a Federal Credit Union." The cited statutes provide that "any person who has been convicted of any criminal offense involving dishonesty or a breach of trust" may not serve as an employee of an "insured credit union" or an institution insured by the FDIC. *See* 12 U.S.C. §§ 1785(d)(1)(A), 1829(a)(1)(A); *see also* 12 U.S.C. §§ 1752, 1813(u). Carter's prior convictions for theft and robbery ("his history") are criminal offenses "involving dishonesty or a breach of trust." *See* Guidance Regarding Prohibitions Imposed by Section 205(d) of the Federal Credit Union Act, 73 Fed. Reg. 48,399, 48,403 (Aug. 19, 2008); Statement of Policy Pursuant to Section 19 of the Federal Deposit Insurance Act, 63 Fed. Reg. 66,177, 66,185 (Dec. 1, 1998). Carter is thus statutorily barred from working at a federal credit union or FDIC-insured institution. As the district court merely incorporated a statutory prohibition and ordered Carter to comply with federal law, there was no abuse of discretion. *See United States v. Miller*, 557 F.3d 910, 918 (8th Cir. 2009).

The judgment of the district court is affirmed.

BYE, Circuit Judge, dissenting.

Under U.S.S.G. § 5G1.3(b)(1), a district court must reduce a defendant's sentence to account for time the defendant has already served in state custody for the same criminal conduct. Contrary to the plain direction of § 5G1.3(b)(1), the district court in this case explicitly refused to credit the twenty-four months Christopher Carter had served in state court on the charges underlying his federal conviction. The district court's miscalculation of Carter's Guidelines range constituted significant procedural error. Because the record shows the district court's error was not harmless, I dissent from the majority's decision to affirm Carter's sentence. Moreover, the district court's special condition of supervised release barring Carter from obtaining employment with an institution insured by the FDIC or Federal Credit Union was an invalid occupational restriction. The district court thus abused its discretion in

imposing the condition, and I dissent from the majority's decision to affirm the imposition of the special condition.

I

In reviewing a district court's sentence, this court's first task is to "ensure that the district court did not commit a significant procedural error, such as miscalculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain why a sentence was chosen." United States v. Martinez-Hernandez, 593 F.3d 761, 762 (8th Cir. 2010) (internal quotation marks and citation omitted). To calculate a defendant's Guidelines range, a district court should begin by determining the offense guideline section from Chapter Two applicable to the offense of conviction, and determining the base offense level. U.S.S.G. § 1B1.1(a)(1), (2). From there, the Guidelines provide step-by-step instructions for the court to follow, such as incorporating the applicable adjustments from Chapter Three, determining the defendant's criminal history from Chapter Four, and calculating the defendant's Guidelines range corresponding to the applicable offense level and criminal history based on Part A of Chapter Five. U.S.S.G. § 1B1.1(a)(3)-(7). The last step in determining a defendant's particular Guidelines range is to "determine from Parts B through G of Chapter Five the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution." U.S.S.G. § 1B1.1(a)(8). It is this last step which is relevant in the instant matter; as explained below, the district court miscalculated Carter's Guidelines range by failing to apply § 5G1.3(b)(3), and thus committed significant procedural error.

Section 5G1.3(b) directs a district court to sentence a defendant subject to an undischarged term of imprisonment as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b). "The Supreme Court described § 5G1.3(b) as part of the 'safeguards built into the Sentencing Guidelines' to protect a defendant 'against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct.'" United States v. Mathis, 451 F.3d 939, 941 (8th Cir. 2006) (quoting Witte v. United States, 515 U.S. 389, 405 (1995)).

Section 5G1.3(b) "can apply only when a defendant has been sentenced in state or federal court for the same criminal conduct or for criminal conduct necessarily included in the later federal charges." United State v. Harris, 324 F.3d 602, 605 (8th Cir. 2003). Moreover, this conduct must be "'the basis for an increase in the offense level for the instant offense.'" United States v. Morris, 458 F.3d 757, 759 (8th Cir. 2006) (quoting U.S.S.G. § 5G1.3(b)). Both prerequisites apply in this case because Carter's state conviction for robbery was relevant conduct to his federal offense of being a felon in possession of a firearm and it was used to increase his offense level. Therefore, this is not a case where § 5G1.3(b)(1) does not apply on its face. Compare id. at 761-62 (remanding for resentencing because the district court failed to apply § 5G1.3(b) where the state conviction was relevant conduct to the instant offense and was the basis for an increase in the defendant's offense level), and United States v. Descally, 254 F.3d 1328, 1333 (11th Cir. 2001) (vacating the defendant's sentence where the two prerequisites for § 5G1.3(b)(1) were satisfied and the district court failed to take into account the time the defendant already served), with United States v. Parker, 512 F.3d 1037, 1040 (8th Cir. 2008) (affirming the district court's decision

not to grant credit under § 5G1.3 because the relevant conduct was not the basis for an increase in the defendant's offense level), and United States v. Burch, 406 F.3d 1027, 1030 (8th Cir. 2005) (holding the conduct underlying the state court convictions was not relevant conduct for purposes of § 5G1.3(b)). Indeed, neither the government nor the majority dispute the application of § 5G1.3(b).

Having established § 5G1.3(b)(1) applies, the district court was bound by the provision's directive. "Section 5G1.3(b)(1)'s language is mandatory: the court *shall* adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment." United States v. Armstead, 552 F.3d 769, 784 (9th Cir. 2008) (emphasis in original); see also Schleining v. Thomas, 642 F.3d 1242, 1244-45 (9th Cir. 2011) ("Application of § 5G1.3(b)(1) was appropriate in this instance because the BOP would not have been able to credit [the defendant's] 21 months in state prison against his federal sentence because those 21 months had already been credited against his state sentence on related charges.").

Despite the mandatory language of § 5G1.3(b)(1), the record reveals the district court did not believe it had to comply with the provision. The court began by asking, "[w]hy should I want to give Mr. Carter credit?" and "[w]hy should I have any mercy on Mr. Carter?" Sent. Tr. at 9-10. After extensive pleading by Carter's counsel to credit Carter's time served, the court made further statements evincing its unwillingness to apply the provision, such as, "[i]f the guidelines are not mandatory, the guidelines can say you should do that and in this case and – I understand what you are saying. You are trying to hold me to the guidelines and what the guidelines say." Id. at 12. Ultimately, the court refused to credit the twenty-four months, which was made crystal clear during a prolonged exchange between Carter's counsel and the court:

MR. TARVER: Your Honor, one of the issues is whether or not you made a determination as to whether the BOP would give him credit for the time that he has served.

THE COURT: Yes. And I did not do that. I am going to run this concurrently, but I am not giving him credit for his time served.

MR. TARVER: I understand that, but did you determine whether or not the BOP would give him credit or not? That was part of what you asked the probation office –

THE COURT: They will if I make a statement on the record that I order them to run it concurrent; otherwise, they will not.

MR. TARVER: No. That's two different things.

THE COURT: You are saying credit for time served already?

MR. TARVER: Yes, sir. That's the first part of that section of 5G1.3. The Court shall adjust the sentence for any periods of imprisonment already served on the undischarged term of imprisonment if the Court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.

THE COURT: I do not determine whether they will. The point was that they would -- you are talking about that's the guideline that you are pointing to?

MR. TARVER: Yes.

THE COURT: Mr. Tarver, I have told you I am not going to give him a guideline sentence on that.

MR. TARVER: That's two different things totally.

THE COURT: You can take it up on appeal.

MR. TARVER: But you have to make a determination on the record for me to do that.

THE COURT: And what determination are you asking me to make?

MR. TARVER: Whether or not the BOP will give him credit.

THE COURT: That's what I said. They won't unless I state on the record that they have to, and I didn't state on the record that they have to. So they will not give him credit. What magic language do I need to say, Mr. Tarver?

MR. TARVER: I think that covers it.

THE COURT: And that's what I said initially.

MR. TARVER: But that's –

THE COURT: I mean, if you need me to say magic language so you can perfect your appeal –

MR. TARVER: The question was whether or not they would give him credit for the sentence, the time that he has already served.

THE COURT: And the answer is no, unless I state on the record that they have to. And I specifically stated on the record that I will not order them to give him credit for time served.

MR. TARVER: But that -- what I am asking is part of the adjustment on the sentence. That's where the numbers came in that the guideline range would be 60 to 81 months as opposed to 84 to 105. The BOP has no say in this whatsoever.

THE COURT: I understand. I think your record is made.

Id. at 18-20. In spite of the court's explicit refusal to credit Carter's time served, the government argues, "[t]he district court plainly understood that a guideline sentence would require 24 months credit for the time Carter had served in ADC," but imposed a variance instead. Appellee's Br. at 9. Based on the district court's incessant denial of any time-served credit, it is difficult to see how the government concludes otherwise.

Moreover, based on the district court's refusal to credit Carter's time served, the government's argument makes no sense. Even if the district court's comments could be construed to uphold a variance, such a conclusion does not hold water because the court clearly rejected the application of § 5G1.3(b)(1), and therefore the court did not have a corresponding lower Guidelines range to vary *from*. Stated differently, to impose an upward variance, the court necessarily had to credit Carter with the twenty-four months' time-served, and then vary upward to the high end of the original Guidelines range. The record does not support this theory because the court clearly declined to credit Carter's time served, and therefore it was effectively proceeding on the only Guidelines range it ever calculated – the original range of 84 to 105 months.

The majority takes a slightly different route, while also arguing the district court imposed a variance. Namely, the majority essentially conflates the § 5G1.3(b)(1) adjustment with the variance determination. Under its interpretation of the Guidelines, the majority concludes, "[r]ather than sentence Carter to a term that reflected an advisory reduction under § 5G1.3(b)(1), the district court determined that a variance from the guidelines was appropriate in light of other factors set forth in 18 U.S.C. § 3553(a)." *Supra* at 4.

I disagree with the majority. As discussed above, the Guidelines provide a step-by-step method by which to calculate a defendant's Guidelines range. See U.S.S.G. § 1B1.1(a). Included among these steps are the applicable adjustments from § 5G1.3(b)(1). See U.S.S.G. § 1B1.1(a)(8). Therefore, by not making any § 5G1.3(b)(1) adjustment, the district court miscalculated Carter's Guidelines range. See United States v. Estrada, 312 F. App'x 664, 666 (5th Cir. 2009) ("[A]lthough Booker provided greater flexibility in sentencing, it did not nullify § 5G1.3(b), and when that section applies, sentencing judges must include its dictates in the calculation of the proper guideline sentence.") (internal quotation marks and citation omitted). "A failure to properly calculate the advisory Guidelines range is a significant procedural error, and a non-harmless error in calculating the [G]uidelines range requires a remand for resentencing." United States v. Tomac, 567 F.3d 383, 385-86 (8th Cir. 2009). To be sure, the district court retained the ability to fashion a variance if it was warranted, but the court was still required to calculate a proper Guidelines range. Consequently, I disagree with the majority's efforts to conflate the § 5G1.3(b)(1) adjustment with the variance analysis. See United States v. Washington, 515 F.3d 861, 865-66 (8th Cir. 2008) ("We urge district courts to continue to engage in the three-step process of first ascertaining the applicable Guidelines range, then considering any permissible departures within the Guidelines' structure, and finally, deciding whether a non-Guidelines sentence would be more appropriate under the circumstances pursuant to § 3553(a).").

The closer question – and one the majority never reaches in light of its finding of no procedural error – is whether the district court's procedural error is harmless. "An error is harmless only if we are convinced that the error did not affect the district court's sentencing conclusion." United States v. Tabor, 531 F.3d 688, 692 (8th Cir. 2008). While it can be argued the district court intended to impose a variance in light of Carter's criminal history, the record as it stands leaves me unconvinced the court would impose the same sentence if it properly credited Carter with the twenty-four months he had served in state court.

First, because it believed it did not have to credit Carter with the twenty-four months he served in state court, the district court never calculated an alternative Guidelines range. See United States v. Icaza, 492 F.3d 967, 971 (8th Cir. 2007) ("[T]o support a finding of harmless error, the record clearly must show not only that the district court intended to provide an alternative sentence, but also that the alternative sentence is based on an identifiable, correctly calculated guidelines range."). The district court did not say, for example, it would have imposed a sentence of 105 months even if it credited Carter's time served. This court has found non-harmless error in prior cases where a district court failed to articulate an alternative sentence. Compare United States v. Williams, 627 F.3d 324, 329 (8th Cir. 2010) ("[W]e would conclude that the procedural error was not harmless because the district court did not articulate any alternative sentence, and there is no clear indication on the record that the district court would have imposed the same sentence if [the defendant's] legal argument had prevailed.") (internal quotation marks and citation omitted), with United States v. Sanchez-Martinez, 633 F.3d 658, 660 (8th Cir. 2011) (concluding any error was harmless because the record was clear the district court would have imposed the same sentence regardless of the error).

Second, because the district court believed it did not have to follow § 5G1.3(b)(1), it essentially was sentencing Carter within his original Guidelines range of 84 to 105 months. If the court properly credited Carter's twenty-four months,

-13-

it is possible the court would sentence him at the high end of the proper Guidelines range.  See United States v. Ewing, 632 F.3d 412, 417 (8th Cir. 2011) (holding the district court's procedural error in miscalculating the defendant's Guidelines range was not harmless because it increased the range, but the court expressed no view on whether a variance might be warranted).  Once again, I do not mean to suggest the court could not impose an upward variance if it desired on remand.  However, given the uncertainty in the present record, I would vacate the district court's sentence and remand for the court to properly apply § 5G1.3(b)(1).  See Morris, 458 F.3d at 761 ("We remand for resentencing because we cannot say based on this record that the combined errors of miscalculating the guidelines sentencing range and failing to apply § 5G1.3(b) did not impact the ultimate sentence imposed by the district court.").  I therefore respectfully dissent from the majority's decision to affirm Carter's sentence.

II

I also dissent from the majority's decision to affirm the imposition of a special condition of supervised release barring Carter from obtaining employment with an institution insured by the FDIC or Federal Credit Union.  "We review the district court's imposition of the terms and conditions of supervised release for an abuse of discretion."  United States v. Durham, 618 F.3d 921, 933 (8th Cir. 2010) (internal quotation marks and citation omitted).  While the district court is afforded wide discretion in formulating conditions of supervised release, "this discretion is limited by the requirement that the conditions be reasonably related to the § 3553(a) factors, involve no greater deprivation of liberty than is reasonably necessary, and are consistent with any pertinent policy statements issued by the United States Sentencing Commission."  Id. (internal quotation marks and citation omitted).

Under the Guidelines, the court may impose occupational restrictions only if it determines the following:

(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction, and

(2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct to that for which the defendant was convicted.

U.S.S.G. § 5F1.5(a).[2]  The Guidelines further provide, "the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public."  U.S.S.G. § 5F1.5(b).  Similarly, by statute, the district court has discretion to restrict the defendant "from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense . . . ."  18 U.S.C. § 3563(b)(5).

The Eighth Circuit has had occasion to consider occupational restrictions in a few cases.  In United States v. Cooper, 171 F.3d 582, 585 (8th Cir. 1999), this court analyzed a condition prohibiting the defendant from being employed as a truck driver "if it involves absence from Cedar Rapids, IA., for more than 24 hours."  The court concluded the restriction "bears no relationship to Cooper's offense of unlawfully transporting dangerous explosives to a storage locker many years ago."  Id. at 586.  This result followed from the legislative history of 18 U.S.C. § 3563(b)(5), which provides:

The condition may be imposed only if the occupation, business, or profession bears a reasonably direct relationship to the nature of the

---

[2]The government concedes the special condition of supervised release is not supported by § 5F1.5.

offense . . . . The Committee recognizes the hardship that can flow from preventing a person from engaging in a specific occupation . . . . This particular condition of probation should only be used as reasonably necessary to protect the public. It should not be used as a means of punishing the convicted person.

Id. (quoting S. Rep. No. 98-225, at 96 (1983)). Accordingly, the court held the district court abused its discretion in imposing the occupational restriction. Id.

In United States v. Choate, 101 F.3d 562, 566 (8th Cir. 1996), this court considered the validity of a condition preventing the defendant from maintaining self-employment. The court upheld the condition, noting the defendant had three separate businesses "that all ended up perpetuating the same cycle of fraud" for which he was charged. Id. Based on the defendant's repeated fraud through these businesses, the court concluded the defendant needed "an employment situation in which he is not left to his own devices," and accordingly, "[t]he prohibition on self-employment seems a reasonable way to protect the public from [the defendant's] practices and to channel [his] energies into a less destructive path." Id.; see also United States v. Coon, 187 F.3d 888, 900 (8th Cir. 1999) ("In light of defendants' long-standing and extensive pattern of criminal racketeering activities, a prohibition against self-employment during supervised release is a restriction reasonably necessary to protect the public.").

Finally, in United States v. Carlson, 406 F.3d 529, 532 (8th Cir. 2005), this court upheld a condition prohibiting the defendant from working in the medical field. The court analyzed both Choate and Cooper, and it believed the case to be more similar to Choate because the defendant had fraudulently obtained prescription medication hundreds of times over several years based on his occupation as an orthopedic physician's assistant. Id. The court concluded these facts provided a reasonably direct relationship, and thus the court did not abuse its discretion. Id.

-16-

Unlike <u>Carlson</u>, I believe the instant matter is closer to <u>Cooper</u> than <u>Choate</u> because there was little, if any, relationship between Carter's conduct and the condition prohibiting him from working with an agency insured by the FDIC or Federal Credit Union. Carter was never employed with such an agency, nor did the facts underlying the instant offense have anything to do with such an agency because he committed armed robbery of an individual at a motel. Moreover, Carter's criminal history –the only cited basis the district court relied on at sentencing – did not contain any reasonably direct relationship to an agency insured by the FDIC or Federal Credit Union. Accordingly, the occupational restriction was not reasonably necessary to protect the public from Carter's conduct. <u>Compare</u> <u>United States v. Starkes</u>, 400 F. App'x. 788, 791 (4th Cir. 2010) (per curiam) ("In this case, it was [the defendant's] position as an HR manager that permitted and indeed facilitated the fraud. The district court thus did not plainly err in limiting [the defendant's] ability to seek employment in the field of human resources during her probation."), <u>and</u> <u>United States v. May</u>, 568 F.3d 597, 608 (6th Cir. 2009) (holding the district court did not abuse its discretion in barring the defendant from having any association with the Financial Services Industry, except as a consumer, because the defendant had used his position as head of a financial services company to embezzle money), <u>with</u> <u>United States v. Erwin</u>, 299 F.3d 1230, 1233 (10th Cir. 2002) ("[T]he record in this case does not establish that prohibiting [the defendant] from fishing commercially is reasonably necessary to protect the public from conduct similar to that for which he was convicted, possession of ammunition.").

In addition, I agree with Carter the condition involves a greater deprivation of liberty than is reasonably necessary under the circumstances. Occupational restrictions may be an effective tool to protect the public when reasonably related to the defendant's conduct, but, as discussed above, there was no such connection in this case, and thus it would only serve as a greater detriment to Carter's rehabilitation efforts once he begins supervised release if the court were allowed to cut off an entire industry of employment opportunity. <u>See</u> <u>United States v. Wittig</u>, 528 F.3d 1280,

-17-

1286-89 (10th Cir. 2008) (reversing a special condition prohibiting the defendant from being employed as an executive and engaging in any financial negotiations in a professional capacity because it violated § 5F1.5 and it entailed a greater deprivation of liberty than is necessary). While Carter certainly has a history of theft and robbery, under the district court's logic, he could be prohibited from working in a myriad of occupations ranging from a gas station clerk to a retail store cashier, or virtually any place with a cash register or goods that could be stolen. The case law does not support such a broad occupational ban when it is a greater deprivation of liberty than reasonably necessary.

Finally, at a minimum, the district court failed to provide sufficient individualized findings to support the imposition of the condition. "When crafting a special condition of supervised release, the district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." United States v. Walters, 643 F.3d 1077, 1079 (8th Cir. 2011). There is little basis in the record for the imposition of the condition, which appeared to come out of nowhere at sentencing. When Carter's counsel objected, the court's only stated basis for the condition was to state, "Well, because of his history . . . that's what I am going to do." Sent. Tr. at 16. With no connection to Carter's offense or his history, the court should have provided a more solid foundation before imposing the condition.[3] Cf. United States v. Poitra, _ F.3d _, 2011 WL 3477192, at *4 (8th Cir. 2011) (affirming the imposition of a special condition where the reasons for the condition were "discernable from the record," and thus "the district court's failure to expressly state those reasons" did not entitle the defendant to relief).

---

[3]Due to the district court's lack of individualized findings, I am not persuaded by the majority's efforts to make such a record on appeal by examining whether Carter's prior convictions for theft and robbery are criminal offenses involving dishonesty or a breach of trust pursuant to 12 U.S.C. §§ 1785(d)(1)(A); 1829(a)(1)(A).

Based upon the reasons set forth herein, I would vacate the special condition of supervised release barring Carter from working with an agency insured by the FDIC or Federal Credit Union.  I therefore dissent from the majority's decision to affirm the imposition of that condition.

_____