BYE, Circuit Judge,
dissenting.
Under U.S.S.G. § 5G1.3(b)(l), a district court must reduce a defendant’s sentence to account for time the defendant has already served in state custody for the same criminal conduct. Contrary to the plain direction of § 5G1.3(b)(l), the district court in this case explicitly refused to credit the twenty-four months Christopher Carter had served in state court on the charges underlying his federal conviction. The district court’s miscalculation of Carter’s Guidelines range constituted significant procedural error. Because the record shows the district court’s error was not harmless, I dissent from the majority’s decision to affirm Carter’s sentence. Moreover, the district court’s special condition of supervised release barring Carter from obtaining employment with an institution insured by the FDIC or Federal Credit Union was an invalid occupational restriction. The district court thus abused *898 its discretion in imposing the condition, and I dissent from the majority’s decision to affirm the imposition of the special condition.
I
In reviewing a district court’s sentence, this court’s first task is to “ensure that the district court did not commit a significant procedural error, such as miscalculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain why a sentence was chosen.” United States v. Martinez-Hernandez, 593 F.3d 761, 762 (8th Cir.2010) (internal quotation marks and citation omitted). To calculate a defendant’s Guidelines range, a district court should begin by determining the offense guideline section from Chapter Two applicable to the offense of conviction, and determining the base offense level. U.S.S.G. § 1B1.1(a)(1), (2). From there, the Guidelines provide step-by-step instructions for the court to follow, such as incorporating the applicable adjustments from Chapter Three, determining the defendant’s criminal history from Chapter Four, and calculating the defendant’s Guidelines range corresponding to the applicable offense level and criminal history based on Part A of Chapter Five. U.S.S.G. § lBl.l(a)(3)(7). The last step in determining a defendant’s particular Guidelines range is to “determine from Parts B through G of Chapter Five the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution.” U.S.S.G. § lBl.l(a)(8). It is this last step which is relevant in the instant matter; as explained below, the district court miscalculated Carter’s Guidelines range by failing to apply § 5G1.3(b)(3), and thus committed significant procedural error.
Section 5G1.3(b) directs a district court to sentence a defendant subject to an undischarged term of imprisonment as follows:
(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
U.S.S.G. § 5G1.3(b). “The Supreme Court described § 5G1.3(b) as part of the ‘safeguards built into the Sentencing Guidelines’ to protect a defendant ‘against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct.’ ” United States v. Mathis, 451 F.3d 939, 941 (8th Cir.2006) (quoting Witte v. United States, 515 U.S. 389, 405, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995)).
Section 5G1.3(b) “can apply only when a defendant has been sentenced in state or federal court for the same criminal conduct or for criminal conduct necessarily included in the later federal charges.” United States v. Harris, 324 F.3d 602, 605 (8th Cir.2003). Moreover, this conduct must be “ ‘the basis for an increase in the offense level for the instant offense.’” United States v. Morris, 458 F.3d 757, 759 (8th Cir.2006) (quoting U.S.S.G. § 5G1.3(b)). Both prerequisites apply in this case because Carter’s state conviction for robbery was relevant conduct to his federal offense of being a felon in possession of a firearm and it was used to increase his offense level. Therefore, this is not a case where § 5G1.3(b)(l) does not apply on its face. Compare id. at 761-62 (remanding for re-sentencing because the district court failed to apply § 5G1.3(b) where the state convic *899 tion was relevant conduct to the instant offense and was the basis for an increase in the defendant’s offense level), and United States v. Descally, 254 F.3d 1328, 1333 (11th Cir.2001) (vacating the defendant’s sentence where the two prerequisites for § 5G1.3(b)(l) were satisfied and the district court failed to take into account the time the defendant already served), with United States v. Parker, 512 F.3d 1037, 1040 (8th Cir.2008) (affirming the district court’s decision not to grant credit under § 5G1.3 because the relevant conduct was not the basis for an increase in the defendant’s offense level), and United States v. Burch, 406 F.3d 1027, 1030 (8th Cir.2005) (holding the conduct underlying the state court convictions was not relevant conduct for purposes of § 5G1.3(b)). Indeed, neither the government nor the majority dispute the application of § 5G1.3(b).
Having established § 5G1.3(b)(l) applies, the district court was bound by the provision’s directive. “Section 5G1.3(b)(l)’s language is mandatory: the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment.” United States v. Armstead, 552 F.3d 769, 784 (9th Cir.2008) (emphasis in original); see also Schleining v. Thomas, 642 F.3d 1242, 1244-45 (9th Cir.2011) (“Application of § 5G1.3(b)(1) was appropriate in this instance because the BOP would not have been able to credit [the defendant’s] 21 months in state prison against his federal sentence because those 21 months had already been credited against his state sentence on related charges.”).
Despite the mandatory language of § 5G1.3(b)(l), the record reveals the district court did not believe it had to comply with the provision. The court began by asking, “[w]hy should I want to give Mr. Carter credit?” and “[w]hy should I have any mercy on Mr. Carter?” Sent. Tr. at 9-10. After extensive pleading by Carter’s counsel to credit Carter’s time served, the court made further statements evincing its unwillingness to apply the provision, such as, “[i]f the guidelines are not mandatory, the guidelines can say you should do that and in this case and — I understand what you are saying. You are trying to hold me to the guidelines and what the guidelines say.” Id. at 12. Ultimately, the court refused to credit the twenty-four months, which was made crystal clear during a prolonged exchange between Carter’s counsel and the court:
MR. TARVER: Your Honor, one of the issues is whether or not you made a determination as to whether the BOP would give him credit for the time that he has served.
THE COURT: Yes. And I did not do that. I am going to run this concurrently, but I am not giving him credit for his time served.
MR. TARVER: I understand that, but did you determine whether or not the BOP would give him credit or not? That was part of what you asked the probation office—
THE COURT: They will if I make a statement on the record that I order them to run it concurrent; otherwise, they will not.
MR. TARVER: No. That’s two different things.
THE COURT: You are saying credit for time served already?
MR. TARVER: Yes, sir. That’s the first part of that section of 5G1.3. The Court shall adjust the sentence for any periods of imprisonment already served on the undischarged term of imprisonment if the Court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.
THE COURT: I do not determine whether they will. The point was that *900 they would — you are talking about that’s the guideline that you are pointing to?
MR. TARVER: Yes.
THE COURT: Mr. Tarver, I have told you I am not going to give him a guideline sentence on that.
MR. TARVER: That’s two different things totally.
THE COURT: You can take it up on appeal.
MR. TARVER: But you have to make a determination on the record for me to do that.
THE COURT: And what determination are you asking me to make?
MR. TARVER: Whether or not the BOP will give him credit.
THE COURT: That’s what I said. They won’t unless I state on the record that they have to, and I didn’t state on the record that they have to. So they will not give him credit. What magic language do I need to say, Mr. Tarver?
MR. TARVER: I think that covers it.
THE COURT: And that’s what I said initially.
MR. TARVER: But that’s—
THE COURT: I mean, if you need me to say magic language so you can perfect your appeal—
MR. TARVER: The question was whether or not they would give him credit for the sentence, the time that he has already served.
THE COURT: And the answer is no, unless I state on the record that they have to. And I specifically stated on the record that I will not order them to give him credit for time served.
MR. TARVER: But that — what I am asking is part of the adjustment on the sentence. That’s where the numbers came in that the guideline range would be 60 to 81 months as opposed to 84 to 105. The BOP has no say in this whatsoever.
THE COURT: I understand. I think your record is made.
Id. at 18-20. In spite of the court’s explicit refusal to credit Carter’s time served, the government argues, “[t]he district court plainly understood that a guideline sentence would require 24 months credit for the time Carter had served in ADC,” but imposed a variance instead. Appellee’s Br. at 9. Based on the district court’s incessant denial of any time-served credit, it is difficult to see how the government concludes otherwise.
Moreover, based on the district court’s refusal to credit Carter’s time served, the government’s argument makes no sense. Even if the district court’s comments could be construed to uphold a variance, such a conclusion does not hold water because the court clearly rejected the application of § 5G1.3(b)(l), and therefore the court did not have a corresponding lower Guidelines range to vary from. Stated differently, to impose an upward variance, the court necessarily had to credit Carter with the twenty-four months’ time-served, and then vary upward to the high end of the original Guidelines range. The record does not support this theory because the court clearly declined to credit Carter’s time served, and therefore it was effectively proceeding on the only Guidelines range it ever calculated — the original range of 84 to 105 months.
The majority takes a slightly different route, while also arguing the district court imposed a variance. Namely, the majority essentially conflates the § 5G1.3(b)(1) adjustment with the variance determination. Under its interpretation of the Guidelines, the majority concludes, “[rjather than sentence Carter to a term that reflected an advisory reduction under § 5G1.3(b)(l), the district court determined that a variance from the guidelines was appropriate *901 in light of other factors set forth in 18 U.S.C. § 3553(a).” Supra at 896.
I disagree with the majority. As discussed above, the Guidelines provide a step-by-step method by which to calculate a defendant’s Guidelines range. See U.S.S.G. § lBl.l(a). Included among these steps are the applicable adjustments from § 5G1.3(b)(l). See U.S.S.G. § 1B1.1(a)(8). Therefore, by not making any § 5G1.3(b)(1) adjustment, the district court miscalculated Carter’s Guidelines range. See United States v. Estrada, 312 Fed.Appx. 664, 666 (5th Cir.2009) (“[Although Booker provided greater flexibility in sentencing, it did not nullify § 5G1.3(b), and when that section applies, sentencing judges must include its dictates in the calculation of the proper guideline sentence.”) (internal quotation marks and citation omitted). “A failure to properly calculate the advisory Guidelines range is a significant procedural error, and a non-harmless error in calculating the [Guidelines range requires a remand for resentencing.” United States v. Tomac, 567 F.3d 383, 385-86 (8th Cir.2009). To be sure, the district court retained the ability to fashion a variance if it was warranted, but the court was still required to calculate a proper Guidelines range. Consequently, I disagree with the majority’s efforts to conflate the § 5G1.3(b)(l) adjustment with the variance analysis. See United States v. Washington, 515 F.3d 861, 865-66 (8th Cir.2008) (“We urge district courts to continue to engage in the three-step process of first ascertaining the applicable Guidelines range, then considering any permissible departures within the Guidelines’ structure, and finally, deciding whether a non-Guidelines sentence would be more appropriate under the circumstances pursuant to § 3553(a).”).
The closer question — -and one the majority never reaches in light of its finding of no procedural error — is whether the district court’s procedural error is harmless. “An error is harmless only if we are convinced that the error did not affect the district court’s sentencing conclusion.” United States v. Tabor, 531 F.3d 688, 692 (8th Cir.2008). While it can be argued the district court intended to impose a variance in light of Carter’s criminal history, the record as it stands leaves me unconvinced the court would impose the same sentence if it properly credited Carter with the twenty-four months he had served in state court.
First, because it believed it did not have to credit Carter with the twenty-four months he served in state court, the district court never calculated an alternative Guidelines range. See United States v. Icaza, 492 F.3d 967, 971 (8th Cir.2007) (“[T]o support a finding of harmless error, the record clearly must show not only that the district court intended to provide an alternative sentence, but also that the alternative sentence is based on an identifiable, correctly calculated guidelines range.”). The district court did not say, for example, it would have imposed a sentence of 105 months even if it credited Carter’s time served. This court has found non-harmless error in prior cases where a district court failed to articulate an alternative sentence. Compare United States v. Williams, 627 F.3d 324, 329 (8th Cir.2010) (“[W]e would conclude that the procedural error was not harmless because the district court did not articulate any alternative sentence, and there is no clear indication on the record that the district court would have imposed the same sentence if [the defendant’s] legal argument had prevailed.”) (internal quotation marks and citation omitted), with United States v. Sanchez-Martinez, 633 F.3d 658, 660 (8th Cir.2011) (concluding any error was harmless because the record was clear the district court would have imposed the same sentence regardless of the error).
*902 Second, because the district court believed it did not have to follow § 5G1.3(b)(l), it essentially was sentencing Carter within his original Guidelines range of 84 to 105 months. If the court properly credited Carter’s twenty-four months, it is possible the court would sentence him at the high end of the proper Guidelines range. See United States v. Ewing, 632 F.3d 412, 417 (8th Cir.2011) (holding the district court’s procedural error in miscalculating the defendant’s Guidelines range was not harmless because it increased the range, but the court expressed no view on whether a variance might be warranted). Once again, I do not mean to suggest the court could not impose an upward variance if it desired on remand. However, given the uncertainty in the present record, I would vacate the district court’s sentence and remand for the court to properly apply § 5G1.3(b)(l). See Morris, 458 F.3d at 761 (“We remand for resentencing because we cannot say based on this record that the combined errors of miscalculating the guidelines sentencing range and failing to apply § 5G1.3(b) did not impact the ultimate sentence imposed by the district court.”). I therefore respectfully dissent from the majority’s decision to affirm Carter’s sentence.
II
I also dissent from the majority’s decision to affirm the imposition of a special condition of supervised release barring Carter from obtaining employment with an institution insured by the FDIC or Federal Credit Union. “We review the district court’s imposition of the terms and conditions of supervised release for an abuse of discretion.” United States v. Durham, 618 F.3d 921, 933 (8th Cir.2010) (internal quotation marks and citation omitted). While the district court is afforded wide discretion in formulating conditions of supervised release, “this discretion is limited by the requirement that the conditions be reasonably related to the § 3553(a) factors, involve no greater deprivation of liberty than is reasonably necessary, and are consistent with any pertinent policy statements issued by the United States Sentencing Commission.” Id. (internal quotation marks and citation omitted).
Under the Guidelines, the court may impose occupational restrictions only if it determines the following:
(1) a reasonably direct relationship existed between the defendant’s occupation, business, or profession and the conduct relevant to the offense of conviction, and
(2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct to that for which the defendant was convicted.
U.S.S.G. § 5F1.5(a).[2] The Guidelines further provide, “the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.” U.S.S.G. § 5F1.5(b). Similarly, by statute, the district court has discretion to restrict the defendant “from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense. ...” 18 U.S.C. § 3563(b)(5).
The Eighth Circuit has had occasion to consider occupational restrictions in a few cases. In United States v. Cooper, 171 F.3d 582, 585 (8th Cir.1999), this court analyzed a condition prohibiting the defendant from being employed as a truck driv *903 er “if it involves absence from Cedar Rapids, IA., for more than 24 hours.” The court concluded the restriction “bears no relationship to Cooper’s offense of unlawfully transporting dangerous explosives to a storage locker many years ago.” Id. at 586. This result followed from the legislative history of 18 U.S.C. § 3563(b)(5), which provides:
The condition may be imposed only if the occupation, business, or profession bears a reasonably direct relationship to the nature of the offense.... The Committee recognizes the hardship that can flow from preventing a person from engaging in a specific occupation.... This particular condition of probation should only be used as reasonably necessary to protect the public. It should not be used as a means of punishing the convicted person.
Id. (quoting S.Rep. No. 98-225, at 96,1984 U.S.C.C.A.N. 3182, 3279 (1983)). Accordingly, the court held the district court abused its discretion in imposing the occupational restriction. Id.
In United States v. Choate, 101 F.3d 562, 566 (8th Cir.1996), this court considered the validity of a condition preventing the defendant from maintaining self-employment. The court upheld the condition, noting the defendant had three separate businesses “that all ended up perpetuating the same cycle of fraud” for which he was charged. Id. Based on the defendant’s repeated fraud through these businesses, the court concluded the defendant needed “an employment situation in which he is not left to his own devices,” and accordingly, “[t]he prohibition on self-employment seems a reasonable way to protect the public from [the defendant’s] practices and to channel [his] energies into a less destructive path.” Id.; see also United States v. Coon, 187 F.3d 888, 900 (8th Cir.1999) (“In light of defendants’ longstanding and extensive pattern of criminal racketeering activities, a prohibition against self-employment during supervised release is a restriction reasonably necessary to protect the public.”).
Finally, in United States v. Carlson, 406 F.3d 529, 532 (8th Cir.2005),- this court upheld a condition prohibiting the defendant from working in the medical field. The court analyzed both Choate and Cooper, and it believed the case to be more similar to Choate because the defendant had fraudulently obtained prescription medication hundreds of times over several years based on his occupation as an orthopedic physician’s assistant. Id. The court concluded these facts provided a reasonably direct relationship, and thus the court did not abuse its discretion. Id.
Unlike Carlson, I believe the instant matter is closer to Cooper than Choate because there was little, if any, relationship between Carter’s conduct and the condition prohibiting him from working with an agency insured by the FDIC or Federal Credit Union. Carter was never employed with such an agency, nor did the facts underlying the instant offense have anything to do with such an agency because he committed armed robbery of an individual at a motel. Moreover, Carter’s criminal history — the only cited basis the district court relied on at sentencing — did not contain any reasonably direct relationship to an agency insured by the FDIC or Federal Credit Union. Accordingly, the occupational restriction was not reasonably necessary to protect the public from Carter’s conduct. Compare United States v. Starkes, 400 Fed.Appx. 788, 791 (4th Cir.2010) (per curiam) (“In this case, it was [the defendant’s] position as an HR manager that permitted and indeed facilitated the fraud. The district court thus did not plainly err in limiting [the defendant’s] ability to seek employment in the field of human resources during her probation.”), and United States v. May, 568 F.3d 597, 608 (6th Cir.2009) (holding the district *904 court did not abuse its discretion in barring the defendant from having any association with the Financial Services Industry, except as a consumer, because the defendant had used his position as head of a financial services company to embezzle money), with United States v. Erwin, 299 F.3d 1230, 1233 (10th Cir.2002) (“[T]he record in this case does not establish that prohibiting [the defendant] from fishing commercially is reasonably necessary to protect the public from conduct similar to that for which he was convicted, possession of ammunition.”).
In addition, I agree with Carter the condition involves a greater deprivation of liberty than is reasonably necessary under the circumstances. Occupational restrictions may be an effective tool to protect the public when reasonably related to the defendant’s conduct, but, as discussed above, there was no such connection in this case, and thus it would only serve as a greater detriment to Carter’s rehabilitation efforts once he begins supervised release if the court were allowed to cut off an entire industry of employment opportunity. See United States v. Wittig, 528 F.3d 1280, 1286-89 (10th Cir.2008) (reversing a special condition prohibiting the defendant from being employed as an executive and engaging in any financial negotiations in a professional capacity because it violated § 5F 1.5 and it entailed a greater deprivation of liberty than is necessary). While Carter certainly has a history of theft and robbery, under the district court’s logic, he could be prohibited from working in a myriad of occupations ranging from a gas station clerk to a retail store cashier, or virtually any place with a cash register or goods that could be stolen. The case law does not support such a broad occupational ban when it is a greater deprivation of liberty than reasonably necessary.
Finally, at a minimum, the district court failed to provide sufficient individualized findings to support the imposition of the condition. “When crafting a special condition of supervised release, the district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements.” United States v. Walters, 643 F.3d 1077, 1079 (8th Cir.2011). There is little basis in the record for the imposition of the condition, which appeared to come out of nowhere at sentencing. When Carter’s counsel objected, the court’s only stated basis for the condition was to state, “Well, because of his history ... that’s what I am going to do.” Sent. Tr. at 16. With no connection to Carter’s offense or his history, the court should have provided a more solid foundation before imposing the condition.[3] Cf. United States v. Poitra, 648 F.3d 884, 889 (8th Cir.2011) (affirming the imposition of a special condition where the reasons for the condition were “discernable from the record,” and thus “the district court’s failure to expressly state those reasons” did not entitle the defendant to relief).
Based upon the reasons set forth herein, I would vacate the special condition of supervised release barring Carter from working with an agency insured by the FDIC or Federal Credit Union. I therefore dissent from the majority’s decision to affirm the imposition of that condition.

. The government concedes the special condition of supervised release is not supported by § 5F1.5.

. Due to the district court's lack of individualized findings, I am not persuaded by the majority's efforts to make such a record on appeal by examining whether Carter's prior convictions for theft and robbery are criminal offenses involving dishonesty or a breach of trust pursuant to 12 U.S.C. §§ 1785(d)(1)(A); 1829(a)(1)(A).