# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1379

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Samuel Johnson Ewing, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 22, 2010
Filed: February 14, 2011

_____

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury found Samuel Johnson Ewing guilty of armed robbery of a federally-insured credit union and brandishing a firearm during a crime of violence. See 18 U.S.C. §§ 2113(a) & (b); 924(c)(1)(A)(ii). The district court sentenced him to 139 months in prison for the robbery and a consecutive 84 months for the brandishing offense. Ewing appeals the conviction, arguing insufficient evidence and error in not suppressing his incriminating statements to an FBI agent. He further argues that the district court erred in imposing four enhancements in determining his advisory guidelines sentencing range. We affirm the convictions, conclude that two enhancements were improper, and remand for resentencing.

## I. Sufficiency of the Evidence

The evidence at trial established that, on the morning of March 26, 2009, a masked robber holding a silver handgun entered the federally insured Heartland Credit Union in Inver Grove Heights, Minnesota, put the gun to an employee's head, and walked her to the teller area. The robber ordered employees to their stations, instructed tellers to put money from their registers into his grocery bag, and left less than two minutes later with $18,600 in cash. Two Credit Union employees rushed to the front of the bank, saw the robber get into a maroon Dodge Dakota truck, noted its license number, and watched as the truck headed east when it left the Credit Union parking lot. Another employee called the police and reported these events.

As the robber drove away from the Credit Union, police officer Matthew Swenke was headed west on the same street, responding to a reported robbery earlier that morning at the nearby office of Top Temporary. Swenke observed a maroon Dodge Dakota headed in the opposite direction driven by a man matching the reported description of the Top Temporary robber. Swenke made a U-turn and followed the Dakota, which soon collided with a utility pole about one thousand feet from the Credit Union. Swenke saw the driver, whom he identified at trial as Ewing, exit the Dakota and flee carrying a light tan bag. Swenke parked his vehicle, called for backup, and gave chase on foot, shouting "Stop! Police!" Swenke apprehended Ewing when he eventually stumbled to the ground. Being advised that the robber at Top Temporary was armed, Swenke cuffed Ewing and conducted a pat-down search, finding no weapon but feeling what Swenke believed to be a plastic bag filled with money in Ewing's left sleeve.

Ewing was thoroughly searched after being brought to another officer's squad car; that search uncovered $8100 in cash in a brown plastic bag. A subsequent warrant search of the truck uncovered $10,500 in cash, a black duffel bag containing Ewing's personal documents, and a black mask with two large eye holes. Officer

Swenke and Officer Jessica Billmeyer retraced Ewing's flight path and found a silver handgun in a backyard where Officer Swenke believed he saw Ewing "toss something." Officer Billmeyer testified that business charge cards and an employee's credit card reported stolen at Top Temporary were found in Ewing's possession.

Inver Grove Heights Detective Corey Thomas testified that Ewing was brought to the police station, given Miranda warnings, and confessed to using a gun to rob Top Temporary and Heartland Credit Union that morning. He also admitted robbing a Mattress Giant store two days earlier and stealing the Dodge Dakota and an ATM card from a Mattress Giant employee at gunpoint. About one hour later, FBI Agent Joseph Malhoit arrived at the police station, investigating another recent bank robbery in the area. Advised that Ewing had confessed to the Credit Union robbery one hour earlier, Agent Malhoit reminded Ewing that the rights he had been advised of still applied. Ewing agreed to speak, again admitted to robbing the Credit Union, and made other incriminating statements. He denied robbing any other banks.

The government's witnesses included Mattress Giant employee Danny Bahr, who testified that he was working on March 24 when a man wearing a black ski mask entered the store, put a pistol to his cheek, and demanded cash. When Bahr showed the robber there was no cash in the store, he stole Bahr's ATM card, later withdrawing $300, tied Bahr up with an extension cord, and stole his Dodge Dakota truck. John Holthaus, manager of Top Temporary, testified that on the morning of March 26 a man wearing a black ski mask entered the office, drew a weapon, and demanded money. Finding no cash, the robber took the three cards later found in Ewing's possession, Top Temporary's BP gas card and Office Max credit card and the personal credit card of another Top Temporary employee, Stephanie Chavez. The robber placed the handgun to Holthaus's head and ordered Ms. Chavez to go to the front of the store and put up a sign saying the office was closed. Instead, Ms. Chavez ran away. The robber gave chase, but she fled to safety while Holthaus escaped out

the back door and called police from a neighboring business. The robber fled in a maroon Dodge Dakota truck.

On appeal, Ewing argues this evidence was insufficient to support the jury's verdict because the gun was not found on his person, no robbery victim saw the robber without a mask or could affirmatively identify Ewing as the robber, and he testified that he did not steal Bahr's truck or commit any of the three robberies. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the jury's verdict and drawing all reasonable inferences in favor of the verdict. United States v. Stymiest, 581 F.3d 759, 764 (8th Cir. 2009), cert. denied, 130 S. Ct. 2364 (2010). Here, the government presented overwhelming evidence that Ewing robbed the Credit Union while brandishing a firearm, evidence supported by Ewing's confessions to Detective Thomas and FBI Agent Malhoit soon after the robbery. The evidence was more than sufficient to support the jury's verdict.

## II. The Suppression Issue

Ewing argues the district court erred when it denied his pretrial motion to suppress his incriminating statements to FBI Agent Malhoit because Malhoit violated Ewing's Miranda rights when he did not give a full second set of warnings but simply reminded Ewing that the rights read to him one hour earlier still applied. Ewing did not move to suppress his prior confession to Detective Thomas. In a thorough Report and Recommendation, Magistrate Judge (now District Judge) Susan Richard Nelson recommended that the district court find no violation of Ewing's rights because he understood and knew how to exercise those rights when he agreed to speak with Agent Malhoit. Ewing failed to object to the Report and Recommendation, and the district court denied his motion to suppress.

By failing to file objections, Ewing waived his right to *de novo* review by the district court; "we review the findings of fact underlying his appeal for plain error and

the admissibility of his statements de novo." United States v. Lockett, 393 F.3d 834, 837 (8th Cir. 2005). Upon careful review of the record, we conclude there was no error of law in admitting Ewing's statements to Agent Malhoit for the reasons stated in the Magistrate Judge's thorough Report and Recommendation. Moreover, as Ewing had fully confessed to the charged offenses to Detective Thomas, after waiving his Miranda rights, any error in admitting his corroborating statements to Agent Malhoit was harmless. See Chavez v. Weber, 497 F.3d 796, 805 (8th Cir. 2007) (admission of statements obtained in violation of Miranda may be harmless error).

## III.  Sentencing Issues

Ewing argues that the district court erred when it applied four enhancements in determining his advisory guidelines sentencing range for the robbery offense. Two of these contentions are without merit. First, a one-level enhancement because the loss exceeded $10,000 but was less than $50,000 was clearly warranted by the evidence that $18,600 was stolen from the Credit Union and later found on Ewing's person and in his getaway vehicle. See U.S.S.G. § 2B3.1(b)(7)(B).

Second, Ewing argues the district court clearly erred by imposing a two-level enhancement for obstruction of justice. See U.S.S.G. § 3C1.1. At trial, Ewing denied stealing Bahr's Dodge Dakota truck or committing the three robberies. To explain his arrest, he testified that he was picked up while walking, placed in an unmarked police car, and driven to the scene of the Credit Union crime by "crooked cops." He denied confessing to Detective Thomas or to Agent Malhoit, claimed he was not given Miranda warnings, and then invoked the Fifth Amendment and refused to answer further questions when the prosecutor began playing a tape recording of Thomas giving those warnings. The district court found that Ewing's unequivocal denial that he robbed the Credit Union and his testimony that he was arrested elsewhere were contrary to overwhelming evidence of his guilt and thus were willfully false statements under oath about a material matter. "We have repeatedly

-5-

affirmed obstruction-of-justice enhancements . . . when the evidence of the defendant's willfulness was unequivocal and the record left no doubt that the defendant's false testimony at trial was not the result of confusion, mistake, or faulty memory." United States v. Vickers, 528 F.3d 1116, 1122 (8th Cir. 2008) (quotation omitted). Ewing argues this enhancement impinges upon his right to testify in his own defense. "There is no constitutional right to lie." United States v. Lange, 918 F.2d 707, 709 (8th Cir. 1990).

The other two challenged enhancements raise more difficult issues. Based upon Ewing's conduct in tying up Mattress Giant employee Bahr and stealing his Dodge Dakota truck at gunpoint, the district court imposed a two-level enhancement because a person "was physically restrained to facilitate commission of the [robbery] offense," U.S.S.G. § 2B3.1(b)(4)(b), and a second two-level enhancement because "the offense involved carjacking," § 2B3.1(b)(5).[1] The Presentence Investigation Report recommended that these enhancements be imposed because the physical restraint and carjacking at Mattress Giant "occurred in preparation for the offense of conviction," the Credit Union robbery. Ewing argues on appeal, as he did in objections to the PSR and at sentencing, that the enhancements were improper because the government failed to prove that conduct that occurred during the commission of the Mattress Giant robbery was committed in preparation for the Credit Union robbery.

The government did not address this issue in its sentencing memorandum or at the sentencing hearing, where it presented no additional evidence. The district court ruled that the Mattress Giant robbery was relevant conduct to the Credit Union

---

[1]"Carjacking" is defined as the "taking of a motor vehicle from the person or presence of another by force and violence or by intimidation." § 2B3.1, comment. (n.1). Without question, the theft of Bahr's truck was carjacking.

robbery under § 1B1.3(a)(1)(A) of the Guidelines. We disagree. Section 1B1.3(a)(1)(A) provides that relevant conduct for offenses such as robbery includes:

> all acts . . . caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

Here, the government presented *no* evidence that Ewing committed the Mattress Giant robbery "in preparation for" the Credit Union robbery two days later. The Mattress Giant and Top Temporary robberies were arguably "part of the same course of conduct" as the Credit Union robbery. U.S.S.G. § 1B1.3(a)(2). But that definition of relevant conduct applies only to offenses "for which § 3D1.2(d) would require grouping of multiple counts." Section 3D1.2(d) specifically excludes robbery offenses governed by § 2B3.1, an exclusion confirmed by the Background commentary to § 1B1.3(a)(2).

On appeal, the government argues that the Mattress Giant robbery was relevant conduct because "it was in the course of that robbery that Ewing stole the vehicle which he used to drive to and flee from the credit union." Bahr testified that, as the robber looked around the Mattress Giant store, he noticed a chain holding the truck keys hanging out of Bahr's pocket, took the keys, "and said, thanks for the car." The fact that Ewing opportunistically stole a vehicle during the course of one robbery that he used in a separate robbery two days later does not make the first robbery relevant conduct to the second under § 1B1.3(a)(1)(A). We have carefully reviewed the testimony of Detective Thomas and FBI Agent Malhoit and find no statements attributed to Ewing suggesting that his conduct during commission of the first robbery was "in preparation for" the later robberies.

For these reasons, we conclude the district court either misinterpreted the relevant conduct guideline, § 1B1.3(a)(1)(A), or made clearly erroneous findings of fact in imposing the two enhancements. These procedural sentencing errors were not harmless, as they increased the guidelines sentencing range for the robbery offense from 84-105 months in prison to 121-151 months. Accordingly, we must remand for resentencing. Of course, the guidelines are advisory; we express no view whether Ewing's series of violent robberies and carjacking warrant an upward variance.

Samuel Ewing's robbery and brandishing convictions are affirmed, and the case is remanded for resentencing.

_____