# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2589

_____

United States of America

*Plaintiff - Appellee*

v.

Justin Lee Howard

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: March 14, 2014
Filed: July 17, 2014

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Justin Lee Howard appeals the sentence imposed by the district court[1] after he pled guilty to one count of extortion in violation of 18 U.S.C. § 875(d). We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Because we find no error

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

in the application of the sentencing guidelines, we affirm Howard's term of imprisonment. Because we believe restitution was ordered in error, we reverse the restitution award.

## I. Background

In June 2011, Howard connected with the victim of his extortion, D.D., through "LifeOut.com," a gay social networking website. D.D. is not openly gay, due at least in part to his occupation. Revealing his sexual orientation could likely cause him to lose his job. Howard asked D.D. for money soon after they began corresponding, and D.D. gave it to him voluntarily. Beginning on August 7, 2011, however, Howard repeatedly asked D.D. for money; with nearly every request via phone call and text, he referred to D.D.'s occupation, which D.D. interpreted as a threat to disclose his sexual orientation to his community. When D.D. finally ran out of money, Howard mentioned he had nude photographs of D.D. and, to prove it, sent D.D. one of the photographs via text on July 3, 2012. D.D. interpreted this text message as a threat to distribute the photograph if D.D. did not pay Howard. On July 13, 2012, lacking any further resources to send, D.D. went to law enforcement.

By the time D.D. reported Howard to law enforcement, he had sent Howard a total of $53,625.25. Howard made additional threats on July 16, including a reminder to D.D. of the nude photographs he possessed. D.D. then sent him $100, which was provided by law enforcement. On July 17, D.D. told Howard he could not send him any more money, and the threats escalated further. Howard asked D.D. to take out a second vehicle title loan so as to send more money to Howard. When D.D. refused to take out such a loan, Howard threatened: "Do the loan today or I swear on my family's lives that I will. Then you'll be dealing with a whirlwind, including media, etc. I am not kidding." Howard threatened to inform D.D.'s secretary first, and shortly thereafter she received a photograph of D.D. with the words "Sky Jock." Howard also threatened to contact D.D.'s family, employer, and coworkers directly,

and he sent faxes to D.D. while D.D. was at a work retreat. Howard continued making such threats through July 27, but D.D. did not send him any more money.

Howard was indicted on one count of extortion for conduct committed "[f]rom on or about July 16, 2012, to on or about July 27, 2012," in violation of 18 U.S.C. § 875(d).[2] Howard pled guilty, agreeing in his Petition to Plead Guilty and Statement of Factual Basis that his plea was limited to conduct "between the dates listed in the indictment."

Pursuant to U.S. Sentencing Guidelines Manual (USSG) § 2B3.3, the base level for extortion is level 9; this level may be increased based on the "amount obtained or demanded." In this case, the district court found that the total "amount obtained or demanded" was $53,625.25 and accordingly applied a 6-level increase in the offense level. See USSG § 2B3.3 (base offense level increased "by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to th[e] amount [obtained or demanded]"). With a 2-level reduction for acceptance of responsibility, the court determined Howard's total offense level was 13. Based on a criminal history category of III, the court calculated the applicable guideline range was 18–24 months. On July 15, 2013, the court sentenced Howard to 21 months in prison, followed by one year of supervised release, and a $53,625.25 restitution award to D.D. Howard appeals two aspects of his sentence, arguing the district court erred in considering conduct that occurred prior to the dates specified in the indictment (pre-July 16 conduct) when calculating both his term of imprisonment and the restitution award.

---

[2] "Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another . . . or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both." 18 U.S.C. § 875(d).

## II. Discussion

We review the district court's interpretation of the guidelines de novo, and its factual findings—including its determination as to whether particular uncharged conduct is considered relevant conduct for sentencing purposes—for clear error. United States v. Allebach, 526 F.3d 385, 388 (8th Cir. 2008); see also United States v. Ewing, 632 F.3d 412, 417 (8th Cir. 2011) (distinguishing between district court's interpretation of the relevant conduct guideline and its factual findings that certain conduct was relevant).

## A. Term of Imprisonment

Howard contends the district court committed procedural error by improperly including the loss amounts associated with his pre-July 16 demands as relevant conduct for purposes of calculating his offense level. USSG § 1B1.3(a) defines relevant conduct, in part, as follows:

(1)(A)      all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant;
. . .
that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; [and]

(2)      solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]

The parties agree that Howard's pre-July 16 conduct cannot constitute relevant conduct pursuant to USSG § 1B1.3(a)(2) as acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." Extortion is "specifically excluded from the operation of [§ 1B1.3(a)(2)]." See USSG § 3D1.2(d) (listing USSG § 2B3.3, extortion, among offenses that may not be grouped). The issue on appeal is whether Howard's pre-July 16 conduct occurred "in preparation for" the offense of conviction: the extortion that occurred between July 16 and 27, 2012, as charged in the indictment.

Conduct considered "in preparation for" an offense means actions that were "taken prior to, and in order to facilitate, the charged offense." United States v. Scolaro, 299 F.3d 956, 957 (8th Cir. 2002). It is not enough that committing one crime made it easier for the same defendant to commit a subsequent crime. See Ewing, 632 F.3d at 416–17 ("opportunistically" stealing a car that was used in a subsequent robbery did not mean the first offense was committed "in preparation for" the second). Rather, preparation is defined in the criminal law context as "[t]he act or process of devising the means necessary to commit a crime." Black's Law Dictionary 1301 (9th ed. 2009).

Over several months, Howard used increasingly intrusive methods to communicate with D.D., which ensured he knew Howard could access his employer and others in his life. Howard was aware that D.D. was most concerned with his employer and community discovering his sexual orientation. Obtaining contact information for D.D.'s secretary and others close to him—and showing D.D. he had it—was necessary for Howard to prove he could follow through on his threats. The success of Howard's later extortions required D.D. to believe he would carry out his threats if D.D. did not continue to acquiesce. After D.D. did not respond to Howard for several days, Howard contacted several people D.D. knew; requested that local

police do a "wellbeing check" on him; and texted D.D. a photo of one of his colleagues, with the words, "[K]now Tony." And on July 16, Howard implicitly acknowledged the importance of these prior extortions. When D.D. questioned Howard's commitment, he responded: "Try me. Try me. I've got everything planned. I am the mastermind." See United States v. Williams, 693 F.3d 1067, 1075 (9th Cir. 2012) (analyzing whether earlier actions "bolster[ed] the credibility" of Williams' extortionate threat to determine if the former were in preparation for the latter).

Howard asserts that a defendant must have intended to commit the charged offense at the time of conduct that is considered "in preparation for" it. Although we have not decided whether such intent is necessary, at least one other circuit has done so. See, e.g., United States v. Yerena-Magana, 478 F.3d 683, 689 (5th Cir. 2007) (A but-for connection between two offenses is not enough; since "[t]here is no evidence in the record before us that Yerena-Magana intended to commit the drug offense for which he was sentenced at the time he illegally entered the United States," "[w]e will not infer that he illegally entered the country 'in preparation for' the drug offense."). Finding that Howard had the requisite intent, we need not resolve the issue in this case. The district court found, and we agree, that each extortion built upon the ones that came before. Howard's continued use of sensitive information in increasingly targeted ways demonstrated his intent to persist after each successful extortion. As D.D. began to run out of money, he nonetheless complied with Howard's demands, apparently believing Howard's escalating and credible threats. Each interaction was carefully orchestrated: as Howard told D.D., "I've got everything planned."

In sum, we cannot find the district court clearly erred in considering Howard's pre-July 16 conduct to be relevant conduct for sentencing purposes. Since there was no procedural error, and Howard does not allege the sentence is substantively unreasonable, we affirm the term of imprisonment.

## B. Restitution Award

We next decide whether the district court erred in requiring Howard to pay restitution to D.D. Under 18 U.S.C. § 3663(a)(1)(A), the district court in sentencing a defendant convicted of certain felony offenses "may order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to any victim of such offense." Howard contends the restitution award to D.D. exceeds this authority. We review de novo the district court's interpretation of the restitution statute. United States v. Engelmann, 720 F.3d 1005, 1014 (8th Cir. 2013).

Under this statute, district courts may award restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction." Hughey v. United States, 495 U.S. 411, 413 (1990). The restitution statute was subsequently amended by the Mandatory Victims Restitution Act of 1996 to clarify the availability of restitution "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity." 18 U.S.C. § 3663(a)(2). This amendment, however, does not disturb Hughey's limit on the conduct that gives rise to restitution for an offense that, like Howard's, does not involve such a scheme, conspiracy or pattern. For instance, in United States v. Reynolds, 432 F.3d 821 (8th Cir. 2005), the defendant pled guilty to making a threatening phone call in violation of 18 U.S.C. § 844(e). He was also charged with, but did not plead guilty to, "using extortionate means to collect credit" and "using fire to commit a felony" against the same victim, whose property was, in fact, "destroyed by suspicious fires." Id. at 822. Since "proof of an underlying scheme or pattern of criminal activity" may be part of, but "is not an *element* of a § 844(e) offense," we applied Hughey to find the defendant responsible "only for the amount of loss caused by the threatening phone call that violated § 844(e), which was zero." Id. at 823. Unless defendants agree otherwise in a plea agreement, district courts may only order restitution for the offense to which the defendants have pled guilty, not for other charged or suspected conduct. Id.

While the government argued this point in its brief on appeal, counsel for the government conceded at oral argument that restitution in this case is governed by <u>Reynolds</u>. As outlined above, Howard's conduct prior to the dates listed in the indictment and guilty plea—July 16 to 27, 2012—was in preparation for the offense of conviction, rather than part of the offense itself. As such, absent a provision to the contrary in the plea agreement, this conduct may not give rise to liability for restitution. The only loss incurred during the dates of conviction was the $100 provided by law enforcement. We therefore reverse the restitution award against Howard.

## III. Conclusion

The case is remanded with directions to strike the restitution award from the Judgment in a Criminal Case entered on July 16, 2013. The Judgment is otherwise affirmed.

_____