# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-3991

———————————————

United States of America

*Plaintiff - Appellee*

v.

Lewis Pate, True Name Lewis Antwhane Pate, III

*Defendant - Appellant*

————————

Appeal from United States District Court
for the District of Minnesota - St. Paul

————————

Submitted: October 17, 2016
Filed: April 14, 2017

————————

Before RILEY,[1] Chief Judge, WOLLMAN and BENTON, Circuit Judges.

————————

RILEY, Chief Judge.

In 2012, a jury found Lewis Pate guilty of being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1); United States v. Pate, 754 F.3d 550, 553 (8th Cir.

———————————————

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

2014).  Based on its designation of Pate as an armed career criminal, the district court[2] sentenced Pate to 200 months imprisonment.  See Pate, 754 F.3d at 553.  After the United States Supreme Court invalidated the residual clause of the Armed Career Criminal Act (ACCA), see Johnson v. United States, 576 U.S. ___, ___, 135 S. Ct. 2551, 2563 (2015), the district court vacated Pate's original sentence and imposed a 120-month sentence.  Pate appeals his revised sentence, see 28 U.S.C. § 1291 (appellate jurisdiction), challenging the district court's application of a four-level sentencing enhancement and classification of one of his previous convictions for burglary as a crime of violence.  See United States Sentencing Guidelines (U.S.S.G. or Guidelines) §§ 2K2.1(a)(2), (b)(6)(B), 4B1.2(a)(1).  We affirm.

## I.     BACKGROUND

Pate was arrested on March 20, 2012, after police officers in St. Paul, Minnesota, responded to a report of gunfire exchanged between two men wearing black hooded sweatshirts and a third man.  See Pate, 754 F.3d at 552.  Responding officers learned one of the shooters had fled to a nearby residence.  See id.  As the officers prepared to enter the residence, Pate, who was inside, came toward the officers, stating, "'I'm the one that was being shot at.'"  Id.  Officers executed a search warrant and discovered a .38 caliber revolver hidden in a laundry hamper and a black hooded sweatshirt in the living room behind a couch.  See id.  Pate later admitted the gun found in the hamper was his, but "insisted he was not carrying the firearm at the time of the shooting."  Id.  We concluded Pate's version of the events "was inconsistent with eyewitness testimony and physical evidence" and affirmed his conviction Id. at 553.

In June 2015, Pate moved under 28 U.S.C. § 2255 to vacate his sentence.  The district court granted his petition to the extent it "challenge[d] his designation as an

---

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Armed Career Criminal" under the ACCA. The United States Probation Office prepared a revised presentence investigation report (PSR). The PSR found Pate had two prior felony convictions for crimes of violence, aggravated robbery and third-degree burglary, and calculated his base offense level as 24. See U.S.S.G. § 2K2.1(a)(2). The PSR recommended a 4-level enhancement pursuant to § 2K2.1(b)(6)(B) for use or possession of "any firearm . . . with another felony offense," or possession of "any firearm . . . with knowledge, intent, or reason to believe that it would be used in connection with another felony offense." Specifically, the PSR found that witnesses at trial had "observed [Pate] holding and firing a weapon at others." With a total offense level of 28 and category VI criminal history, Pate's advisory Guidelines sentencing range was 140-175 months. Because that range exceeded the statutory maximum of ten years, the PSR recommended a 120-month sentence. See 18 U.S.C. § 924(a)(2); U.S.S.G. § 5G1.1(a). Over Pate's objections, the district court adopted the PSR's recommendation and sentenced Pate to 120 months imprisonment.

## II.    DISCUSSION

"'We review the district court's interpretation of the guidelines de novo, and its factual findings . . . for clear error.'" United States v. Ewert, 828 F.3d 694, 697 (8th Cir. 2016) (omission in original) (quoting United States v. Howard, 759 F.3d 886, 889 (8th Cir. 2014)). Pate first challenges the district court's application of the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Section 2K2.1(b)(6)(B) states that a defendant's offense level is increased by four levels if the defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). "Another felony offense" is defined as "any Federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Id. § 2K2.1 cmt. n.14(C). When § 2K2.1(b)(6)(B) is applied and "'the

-3-

defendant has not been convicted of another state or federal felony offense,'" as is the case here, "'the district court must find by a preponderance of the evidence that another felony offense was committed, and that use or possession of the firearm "facilitated" that other felony.'" United States v. Holm, 745 F.3d 938, 940 (8th Cir. 2014) (quoting United States v. Littrell, 557 F.3d 616, 617 (8th Cir. 2009)).

At the resentencing hearing, Pate argued, because no one was injured and no charges were brought in relation to the shooting, his conduct could, at most, qualify as a gross misdemeanor—but not a felony. While the district court never explicitly addressed this argument, in response to Pate's argument, the district court did explain the trial record supported the application of the enhancement. The district court reasoned, "even without strong proof that Mr. Pate was the shooter on the night in question, . . . there is a sufficient basis to find that he possessed the firearm in connection with another felony offense or possessed the firearm with knowledge, intent or reason to believe it would be used in connection with another felony offense."[3] The district court noted that, even if the four-level enhancement did not apply, and the total offense level moved down to 24, resulting in an advisory Guidelines sentencing range of 100-120 months, it would "still think that the 120 months' sentence would be appropriate under the circumstances."

---

[3]The four-level enhancement was also applied in Pate's original sentence. The district court made a more thorough factual finding in imposing the enhancement then, stating:

> Although the shooting of the firearm was not an element to be considered by the jury, there was the testimony adduced surrounding the incident which convinces me by the preponderance of the evidence . . . that the firearm was possessed in connection with the crime of violence and that the defendant shot the firearm during the course of the earlier part of the offense prior to the retrieval of the gun from the bathroom.

Pate complains the government never proved—nor attempted to prove—he was present during the shooting. Pate points out the lack of physical evidence connecting Pate and the gun found in the laundry hamper, as well as the fact that the shell casings discovered at the shooting location did not match that gun. Although during closing arguments the government remarked it did not "have to prove" that Pate possessed the gun during the shooting or shot anyone with it, the government cast doubt on Pate's version of events, which we determined was inconsistent with testimony at trial. See Pate, 754 F.3d at 553. A government witness observed the shooting and described two men wearing black hooded sweatshirts shooting at a third man who returned their fire. The witness could not state with certainty which men were shooting, but he stated the shooting went on for a minute or less before the shooters fled. And when officers arrived at the residence where Pate was found, Pate appeared at the front door with his hands up and announced "'I'm the one that was being shot at.'" In addition, although the casings found at the scene of the shooting did not match the gun determined to be in Pate's possession, Pate's gun was a revolver and would not have expelled cartridges like a semiautomatic or automatic weapon would have. It also had two rounds missing from its six-shot cylinder.

Pate also argues the evidence was insufficient to support the enhancement because "neither the PSR nor the Court determined that there was in fact a felony offense committed by anyone that day." True, neither the government nor the district court identified an underlying state or federal statute Pate could have been charged with violating. But the unopposed PSR clearly indicated the relevant conduct supporting the enhancement was "firing a weapon at others," and the government argued at sentencing that the trial evidence "proved there was a shootout on the street and Mr. Pate was part of it by his own admission." The government witness stated the men were shooting guns at each other—not merely discharging their firearms in

a fashion that would have supported only a misdemeanor charge.[4]  Even if the government found the underlying conduct—which it describes as the "gun battle" in its brief—obviously felonious, without a specific identification of the felony we are forced to work backward from the district court's findings, which here is no easy task. During the resentencing hearing, the district court merely concluded that Pate "possessed the firearm in connection with another felony."  We decline to find clear error on the part of the district court, given that (1) the district court concluded Pate "shot the firearm" at the initial sentencing; (2) Pate's statement that he was "'the one . . . being shot at'" supports the conclusion he was present during the shootout; and (3) the evidence is consistent with the eyewitness's testimony at trial.  See United States v. Battle, 774 F.3d 504, 516 (8th Cir. 2014) (determining the district court did not clearly err where it "conduct[ed] its own fact-finding for the purposes of applying the [§ 2K2.1(b)(6)(B)] enhancement" and found by a preponderance of the evidence the defendant had committed a shooting); United States v. Walker, 771 F.3d 449, 452 (8th Cir. 2014) (deciding the omission of a reference to the underlying offense was "harmless"—"if an error at all"—"because the facts as found by the court obviously supported a charge that Walker had violated [the state statute at issue]").

Pate next argues the district court erred when it concluded his prior conviction for third-degree non-residential burglary under Minnesota law was a crime of violence.  See U.S.S.G. §§ 2K2.1(a)(2), 4B1.2(a)(2).  In June 2016, we vacated our judgment in United States v. Benedict, where we held "[c]ommercial burglary should . . . properly be classified as an enumerated crime of violence under the guidelines." United States v. Benedict, 815 F.3d 377, 385 (8th Cir. 2016); see also United States v. Stymiest, 581 F.3d 759, 768 (8th Cir. 2009) ("[W]e have repeatedly held that any

---

[4]Minn. Stat. § 609.66, subdiv. 1a(a)(2), (b)(1) states whoever "intentionally discharges a firearm under circumstances that endanger the safety of another" may be sentenced "to imprisonment for not more than five years."  Reckless discharge of a firearm within a municipality carries a sentence of up to two years.  See id. subdiv. 1a(a)(3), (b)(2).

generic burglary is a crime of violence under the 'otherwise involves' residual provision in U.S.S.G. § 4B1.2(a)(2).").  Had Pate's prior conviction for third-degree burglary not been considered a crime of violence under the Guidelines, his base offense level would have been four levels lower.  See U.S.S.G. § 2K2.1(a)(4)(A).  As a result, Pate's total offense level would have been 24 (including the § 2K2.1(b)(6)(B) enhancement) as opposed to 28, and his advisory Guidelines sentencing range would have been 100 to 120 months—instead of 140 to 175.  Yet here, the district court plainly stated that "were the case law to develop such that the appropriate level would move the defendant from 28 down to 24 points, the sentence that this Court would impose would still be 120 months, which would be within the applicable range."[5]  "'When the guidelines are incorrectly applied, we remand for resentencing *unless* the error was harmless, such as when the district court would have imposed the same sentence absent the error.'"  Ewert, 828 F.3d at 697 (emphasis added) (quoting United States v. Idriss, 436 F.3d 946, 951 (8th Cir. 2006)).  Any error in the classification of this prior conviction was harmless because the district court expressly determined it would have imposed the same sentence.

## III.  CONCLUSION

We affirm Pate's sentence.

---

[5]The government posits the district court's discussion of a different offense level was in regard to the application of § 2K2.1(b)(6)(B), not the definition of "crime of violence" under the Guidelines.  Even if existing precedent were to change and Pate's base offense level should have been four levels lower, because we affirm the application of the four-level enhancement, his total offense level would still be 24.  Furthermore, the sentence was not based solely on the district court's application of the Guidelines.  At resentencing, the district court discussed Pate's ongoing rehabilitation and described "other incidents of [Pate's] assaultive behavior within prison [as] worrisome."